**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Makitio G. A.,

        Petitioner,

v.

Todd Blanche, *Attorney General*;
Markwayne Mullin, *Secretary, U.S.
Department of Homeland Security*; Todd
M. Lyons, *Acting Director of Immigration
and Customs Enforcement*; David
Easterwood, *Acting Director, St. Paul
Field Office Immigration and Customs
Enforcement*; Eric Tollefson, *Sheriff of
Kandiyohi County*,

        Respondents.

Case No. 26-cv-2200 (ECT/DLM)

**REPORT AND
RECOMMENDATION**

---

This matter is before the Court on Petitioner Makitio G. A.'s Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1.) Makitio G. A. contends that his ongoing detention violates the Due Process clause of the Fifth Amendment, the Administrative Procedure Act ("APA") and the *Accardi*[1] doctrine. He also alleges that his arrest violates the Fourth Amendment. Respondents, for their part, argue that because Petitioner is subject to a final order of removal, and because his removal is likely in the reasonably foreseeable future, his detention is lawful and his petition should be denied. (Doc. 6.) Makitio G. A.'s Petition now comes before the Court for review under Rule 4 of the Rules Governing

---

[1] *See generally United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

Section 2254 Cases in the United States District Court.[2] The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons explained below, the Court recommends that Makitio G. A.'s Petition for Writ of Habeas Corpus (Doc. 1) be granted.

## BACKGROUND

Petitioner Makitio G. A. is a citizen of Angola and a resident of South Portland, Maine, where he lives with his wife and his two young children, all of whom are American citizens. (Doc. 1 ¶¶ 16, 18.) On December 3, 2019, United States Border Patrol ("USBP") encountered Makitio G. A. near Del Rio, Texas where agents interviewed him and determined that he had no authorization to enter the United States and so detained him. (Doc. 7 ¶ 4.) On December 5, 2019, USBP served Makitio G. A. a Notice and Order of Expedited Removal, form I-860, charging removability as a noncitizen present in the United States without valid immigrant visa. (*Id*. ¶ 5.) At that time, Petitioner claimed credible fear if he returned to his home country. (*Id*.) On December 18, 2019, United States Citizenship and Immigration Services ("USCIS") issued a Negative Fear Finding in Makitio G. A.'s case. (*Id*. ¶ 6.) Petitioner requested review of this decision, and an immigration judge overturned USCIS's decision on January 14, 2020. (*Id*. ¶ 7.) Ultimately, however, an immigration judge ordered Makitio G. A. to be removed from the United States to Angola. (Doc. 7 ¶ 8; *See* Doc. 7-1 at 18.) That order became final on May 25,

---

[2]Although Makitio G. A.'s Petition is not filed under 28 U.S.C. § 2254, the Court may apply the rules governing that section per Rule 1(b).

2021, after the Board of Immigration Appeals ("BIA") dismissed Petitioner's untimely appeal.[3] (Doc. 7 ¶¶ 9, 11; *see generally* Doc. 7-2.) On June 21, 2021, Makitio G. A. filed a Petition for Review with a federal appellate court (Doc. 7 ¶ 12) which the Court dismissed on June 2, 2022. (*Id.* ¶¶ 12, 14.)[4] On March 5, 2021, ICE released Makitio G. A. from detention on an Order of Recognizance. (*Id.* ¶ 10.) On August 31, 2021, ICE placed Makitio G. A. under an Order of Supervision. (*Id.* ¶ 13.)

On March 3, 2026,[5] ICE arrested Petitioner and revoked his Order of Supervision. (*Id.* ¶ 15.) At the time of his arrest, Makitio G. A. was shown no warrant by arresting agents. (Doc. 1 ¶ 19.) Four days after Petitioner's arrest, ICE obtained a warrant of removal. (*See* Doc. 7-4 at 1-2.) Since entering ICE custody, Petitioner has not received any documentation explaining the basis for his detention. (Doc. 1 ¶ 20.) On March 16, 2026, ICE sent a travel document request to the Angolan Consulate in order to deport Petitioner to Angola. (Doc. 7 ¶ 16.) The Consulate rejected the travel document request due to lack of an Angolan photo identification for the Petitioner. (*Id.* ¶ 17.) ICE then conducted a review of Petitioner's Alien File ("A-file") and found a national Angolan identification card that had been initially overlooked. (*Id.*) ICE sent the copy of this card to the Angolan

---

[3] Despite evidence of the above proceedings, Makitio G. A. stated in his verified petition that he believes he has no final order of removal against him. (Doc. 1 ¶ 17.) This is contradicted by record evidence. (*See* Docs. 7-1, 7-2.)

[4] The attached Declaration (Doc. 7) indicates that Makitio G. A. appealed to the Eighth Circuit (Doc. 7 ¶ 12), but the attached exhibit reflects that Petitioner in fact appealed to the Fifth Circuit. (*See generally* Doc. 7-3.)

[5] In his Petition, Makitio G. A. alleges that ICE detained him on or around February 29, 2026, after an initial detention by Canadian immigration officials in Canada on February 27, 2026. (Doc. 1 ¶ 19.)

Consulate with a request that the Consulate reconsider the travel document application. (*Id*.) That travel document application remains pending. (*Id*. ¶ 18.) Because the Consulate is in possession of Makitio G. A.'s Angolan ID, ICE believes that removal in the near future is likely based on past interactions with the Consulate. (*Id*.) Makitio G. A. remains in the custody of Kandiyohi County Jail in Willmar, Minnesota. (Doc. 1 ¶ 21; Doc. 7 ¶ 19.) As of the government's filing, he had been in custody for 44 days. (Doc. 7 ¶ 19.)

### *8 U.S.C. § 1231*

The statutory framework codified at 8 U.S.C. § 1231 governs the detention and removal of noncitizens with final removal orders. It provides that the Attorney General shall remove a person present unlawfully in the United States "within a period of 90 days" after a final order of removal. 8 U.S.C. § 1231(a)(1)(A). When the government fails to remove someone within that 90-day window, any enduring detention may be unlawful unless there is a significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 700-01 (2001). A period of detention for more than six months in these circumstances is presumptively unreasonable. *Id*.

### *8 C.F.R. § 241.13(i)*

The implementing regulations at 8 C.F.R. § 241.13 set out the requirements the government must follow to revoke the release of a noncitizen subject to an order of supervision. It provides that release may be revoked where the noncitizen violates the conditions of his release. 8 C.F.R. § 241.13(i)(1). In those cases, the noncitizen "may be continued in detention for an additional six months in order to effect the [noncitizen]'s removal, if possible, and to effect the conditions under which the [noncitizen] had been

released." *Id*. Revocation and return to custody may also occur, "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id*. § 241.13(i)(2). In those cases, the noncitizen must be notified of the reasons for the Service's decision "upon revocation." *Id*. § 241.13(i)(3). Additionally, "promptly" after the noncitizen returns to custody upon revocation, immigration officials must conduct an interview to afford the noncitizen "an opportunity to respond to the reasons for revocation stated in the notification." *Id*. At that point, the noncitizen may submit evidence to show that there is no significant likelihood of removal in the reasonably foreseeable future or that he has not violated the terms of release. *Id*. The subsequent revocation custody review must include an evaluation of contested facts and a "determination whether the facts as determined warrant revocation and further denial of release." *Id*.

### *Makitio G. A.'s Petition Challenging Detention*

Petitioner challenges his detention on the grounds that ICE arrested him without a warrant, and warrantless arrests made under § 1225 violate the Due Process Clause of the Fifth Amendment as well as the Fourth Amendment. (Doc. 1 ¶¶ 32-44.) Makitio G. A. also contends that his detention is unlawful because warrantless arrests require a custody determination within forty-eight hours under 8 C.F.R. § 287.3, a determination ICE never made in his case. (*Id*. ¶¶ 45-50.) More generally, Petitioner challenges his detention without legal basis under the Fifth Amendment Due Process Clause. (*Id*. ¶¶ 51-63.)

Respondents contend that Makitio G. A.'s arrest was lawful because arresting officers obtained a warrant after Petitioner's arrest, and in any event, there was probable

cause that he was present in the country unlawfully. They also argue that Makitio G. A.'s detention is lawful under *Zadvydas* because the government is working with the Angolan Consulate to obtain travel documents such that Petitioner's removal is likely in the reasonably foreseeable future.

## ANALYSIS

The writ of habeas corpus is a procedure available to prisoners to create government accountability for unlawful detention. *See Peyton v. Rowe*, 391 U.S. 54, 58 (1968); *Ex parte McCardle*, 73 U.S. (6 Wall.) 318, 325-26 (1867). The right to habeas relief extends to "persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). Federal courts have the authority to order the release of "detained noncitizens when ICE fails to follow its own regulations." *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 779 (8th Cir. 2025).

At the outset, the Court observes that 8 U.S.C. § 1225 is inapposite to Makitio G. A. because he is subject to a final removal order. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) ("Once a[] [noncitizen] has a final removal order that is not subject to a judicial stay, detention authority shifts to 8 U.S.C. § 1231(a)."); *Mohammed S. v. Tritten*, No. 20-cv-793 (NEB/ECW), 2020 WL 2750836, at *7 (D. Minn. Apr. 28, 2020), *R.&R. adopted*, No. 20-cv-783 (NEB/ECW), 2020 WL 2750109 (D. Minn. May 27, 2020) ("The statutory basis for detaining [Petitioner] recently changed from 8 U.S.C. § 1225 to 8 U.S.C. § 1231 when he received a final order of removal."). Accordingly, Petitioner's arguments made pursuant to § 1225 miss the mark. Even so, the Court considers

6

Petitioner's claims challenging his detainment under the Fifth Amendment more generally.

Additionally, in Petitioner's circumstances, *Zadvydas v. Davis* is also—at this point—inapplicable. Courts across the country, including those in this District, differentiate Petitioners released on supervision where a final removal order determination has already been made, from *Zadvydas* Petitioners who are detained continuously from the time of their final order for removal. *Vang v. Bondi*. 26-cv-1381 (JMG/DLM), 2026 WL 458195, at *4 (D. Minn. Feb. 18, 2026) ("But *Zadvydas* does not apply to noncitizens subject to an order of supervision, where there has already been a determination that a noncitizen is not likely to be removed.").[6] Makitio G. A. is a noncitizen with a final removal order who was granted supervised released from immigration detention, and now faces revocation of that release. That involves a question of re-detention (governed by regulation), not extended detention (governed primarily by *Zadvydas*). Accordingly, the Court finds 8 C.F.R. § 241.13—not *Zadvydas*—to be the proper framework under which to consider Petitioner's Fifth Amendment claims. And pursuant to that review, the Court recommends granting his Petition.

---

[6] *See also Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025) ("This case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*. This case is about ICE's authority to re-detain [Petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]. The DHS regulation, 8 C.F.R. § 241.13(i), applies to non-citizens in Petitioner's situation."); *Zavvar v. Scott*, No. 25-2104-TDC, 2025 WL 2592543, at *4 (D. Md. Sept. 8, 2025) (same); *Nguyen v. Bondi*, No. EP-25-CV-323-KC, 2025 WL 3120516, at *4 (W.D. Tex. Nov. 7, 2025) (same); *Trejo v. Warden of ERO El Paso E. Mont.*, 25- cv-401, 2025 WL 2992187, at *6-7 (W.D. Tex. Oct. 24, 2025) (same).

## I.    PETITIONER'S HABEAS PETITION SHOULD BE GRANTED.

### A.    Petitioner's Warrantless Arrest.

Makitio G. A. argues that his arrest without a warrant violates the Fourth Amendment. Respondents counter that Petitioner's arrest was valid because a warrant for removal was procured four days after his arrest. And, Respondents say, 8 U.S.C. § 1357(a)(2) allows an officer to arrest a noncitizen without a warrant in certain circumstances. Because Makitio G. A. is subject to a final removal order and was apprehended in Canada, those circumstances are satisfied here, they argue.

The Court starts with an obvious proposition: if a removal warrant for Makitio G. A. was not procured until four days after his March 3, 2026 arrest, that means he was arrested without a warrant. Second, the Court determines that Respondents failed to satisfy the requirements for a warrantless arrest outlined in § 1357(a)(2). Under § 1357(a)(2), an officer may arrest a noncitizen without a warrant whom the officer has "reason to believe . . . is in the United States in violation" of "any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of [noncitizens]" and "*is likely to escape before a warrant can be obtained for his arrest*[.]" 8 U.S.C. § 1357(a)(2) (emphasis added).

"Because the Fourth Amendment applies to arrests of [noncitizens], the term reason to believe in § 1357(a)(2) means constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010) (collecting cases). Respondents have presented the I-205 warrant of removal which was served to Petitioner on March 7, 2026. (Doc. 7-4.) The warrant shows that Makitio G. A. is subject to removal based on an order

of removal from an immigration judge. (*Id.*) But there is nothing in the record to support the notion that Petitioner was likely to escape before ICE agents could obtain and execute a valid warrant. A noncitizen's unlawful presence in the United States does not necessarily establish a likelihood of escape by virtue of being a removable noncitizen. *Francisco M.A., v. Blanche et al*, No. 26-cv-2032 (JRT/EMB), 2026 WL 1229701, at *3 (D. Minn. May 5, 2026); *see also Ruben D.A.G. v. Blanche*, 26-cv-2041, slip op. 9, at 8 (D. Minn. Apr. 20, 2026). Such a reading would all but collapse § 1357(a)(2)'s two distinct requirements that an officer have reason to believe that a noncitizen 1) is in the United States unlawfully, and 2) is "likely to escape before a warrant can be obtained for his arrest" into one, thus rendering the statute's limitations on warrantless arrests meaningless.

Respondents also point to Petitioner's detainment by officials in Canada as evidence of his attempted escape. But Respondents offer no evidence to support their assertion that Makitio G. A. was attempting to "escape" to Canada—they appear to extrapolate that idea from one paragraph of Makitio G. A.'s Petition providing that Petitioner was turned over to ICE by Canadian officials. (*See* Doc. 1 ¶ 19.) Certainly, Respondents—who bear the burden of establishing probable cause to support Petitioner's warrantless arrest—could have attempted to harness *evidence* of Petitioner's likelihood of escape, but their filings contain none. Absent such evidence, the Court is left to conclude that Respondents failed to comply with requirements for arresting a noncitizen without a warrant under 8 U.S.C. § 1357. *Francisco M. A.,* 2026 WL 1229701, at *3.

The Court's analysis does not end here. The Court looks next to whether Respondents revoked Petitioner's Order of Supervision consistent with ICE's revocation procedures and the Fifth Amendment's Due Process Clause.

## B.    Inadequate Notice and Opportunity to be Heard.

Petitioner contends that his detention violates the Fifth Amendment. (Doc. 1 ¶¶ 51-63.) Although he primarily makes this argument in reference to the statutory requirements of 8 U.S.C. § 1225(b)(2)—which are inapposite—Makitio G. A. also makes a more generalized Fifth Amendment argument that his detention without basis is unconstitutional. (*Id.* ¶ 58.) Respondents object. In their view, because *Zadvydas* governs and because Petitioner has been held less than 90 days, his Petition is premature, and his Fifth Amendment claims automatically irrelevant. Respondents agree that the implementing regulations at 8 U.S.C. § 241.13 apply to Petitioner's claims and contend that they complied fully with agency regulation because they obtained a warrant four days after Makitio G. A.'s arrest and detainment. (*See* Doc. 6 at 10.)

## 1.    Notice.

The implementing regulations at 8 C.F.R. § 241.13(i)(3) require that when a noncitizen is notified of a release revocation, that notification must include the reasons for the revocation. 8 C.F.R. § 241.13(i)(3). Interpreting this provision, courts have held that those reasons must be individualized; boilerplate, generalized recitations are insufficient. *See Roble v. Bondi*, 803 F. Supp. 3d 766, 771 (D. Minn. 2025) (recommending habeas relief where ICE merely "parrot[ed]" the regulatory text and gave no reasons explaining the change in circumstances); *Sarail A.*, 803 F. Supp. 3d at 780 ("Simply to say that

10

circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough. Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition.").

The record before the Court shows that ICE failed to adequately notify Makitio G. A. of the reasons for the revocation of his supervised release. Respondents do not explain the reasons for Makitio G. A.'s re-detention in their Response, nor do they include the Notice provided to him as an exhibit. (*See generally* Docs. 6, 7.) They seem to infer that the 2019 Notice and Order of Expedited Removal satisfied procedural notice requirements. (Doc. 6 at 10.) But that Notice was issued six years before the events at issue and does not cure the procedural deficiencies in this case because, in part, Petitioner had been released on an Order of Supervision after provision of that Notice. And to the extent the government argues that the warrant issued after Makitio G. A.'s arrest satisfies § 241.13(i)(3), the Court disagrees. As Courts in this District and across the country have held, the issuance of a Notice of Revocation *after* detainment of a noncitizen on supervised release is impermissible. *Pham v. Noem*, No. 26-cv-1445 (ECT/DJF) (D. Minn. March 3, 2026) (concluding six-day detainment before revocation of supervised release violated immigration regulation); *see also M.S.L. v. Bostock*, No. 6:25-cv-1204 (AA), 2025 WL 2430267, at *10, 12 (D. Or. Aug. 21, 2025) (same). Moreover, the warrant does not provide specific reasons explaining the revocation of Petitioner's supervised release, as required. (*See generally* Doc. 7-4.) Likewise, the warrant's signature block has been inexplicably redacted, leaving the Court without sufficient evidence to determine the authority of any

signatory.[7] (*Id.*) Therefore, based on the record before it, the Court finds that Respondents failed to apprise Makitio G. A. of the specific reasons for the revocation of his release in violation of 8 C.F.R. § 241.13(i)(3).

**2.      Interview.**

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal citations omitted). For noncitizens subject to re-detention, this fundamental right is secured by the informal interview requirement under 8 C.F.R. § 241.13(i)(3). The interview requirement applies no matter the basis of revocation: violation of supervised release or a changed circumstances finding. *Sarail A.*, 803 F. Supp. 3d at 789. Respondents observe that 8 C.F.R. § 241 applies to Petitioner's claims, but they are silent as to whether ICE provided Makitio G. A. an opportunity to interview "promptly" after the revocation of his release. (*See generally* Docs. 6, 7.) And so, based on the record before it, the Court finds that Makitio G. A. was afforded no opportunity to contest the revocation of his release through an informal interview as was his right under 8 C.F.R. § 241.13(i)(3).

In sum, the record shows that ICE failed to follow its applicable revocation procedures when it detained Petitioner but provided no notice to him specifying the reasons for the revocation of his release and provided no opportunity to interview promptly after

---

[7] Redactions such as this seem to have become commonplace in recent immigration habeas corpus proceedings, yet the Court is aware of no authority for such action. Respondents are free to produce incomplete evidence in this manner, but should be cognizant that it impedes the Court's ability to conduct a fulsome analysis on matters which Respondents bear the burden of proof—particularly where Respondents' other evidence does not fill the gaps by informing the Court of the authority of the signatory.

his detention. Respondents therefore not only violated immigration regulations, but Makitio G. A.'s Due Process rights to notice and an opportunity to be heard. *See Tou T.*, 2026 WL 712816, at \*4 (holding that when "ICE re-detains a noncitizen and fails to comply with applicable revocation procedures, it violates the Due Process rights to which noncitizens are entitled."). Because this record alone merits the grant of Makitio G. A.'s Petition, the Court does not consider the parties' further arguments. Accordingly, the Court recommends that Petitioner Makitio G. A.'s Petition (Doc. 1) be granted.

## II.   REMEDY.

Respondents contend that even if the Court finds procedural error in Petitioner's detention, "the solution is for the agency to redo the process and correct any deficiencies— not release Petitioner from detention outright." (Doc. 6 at 11.) The Court disagrees. When the government fails to follow its own regulations, the resulting detention is unlawful, and release is the appropriate remedy. *Vang v. Bondi*, No. 26-cv-1381 (JMG/DLM), 2026 WL 458195, at \*2 (D. Minn. Feb. 18, 2026) ("The government's failure to follow the regulations set forth in § 241.13 indicates an unlawful detention."); *see also Rokhfirooz v. Larose*, 804 F. Supp. 3d 1095, 1099 (S.D. Cal. 2025) ("Courts have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered."); *Faysal N. v. Noem*, No. 25-cv-4641 (JMB/DLM), 2026 WL 36066, at \*5 (D. Minn. Jan. 6, 2026) (detention is unlawful where "ICE did not comply with its own regulations under section 241.13(i)(2)."); *Phongsavanh v. Williams*, No. 25-cv-426 (SMR/SJB), 2025 WL 3124032, at \*5 (S.D. Iowa Nov. 7,

13

2025) (same); *accord Zhu v. Genalo,* 798 F. Supp. 3d 400, 414 (S.D.N.Y. 2025) (detention is unlawful where ICE failed to follow procedures in § 241.4).

In detaining Makitio G. A., Respondents violated both their own binding regulations and the Fifth Amendment Due Process rights to which Petitioner is entitled. Petitioner's detainment is unlawful, and release is the appropriate remedy.

## III.   NO EVIDENTIARY HEARING IS REQUIRED.

An evidentiary hearing is appropriate only when material facts are in dispute. *Ruiz v. Norris*, 71 F.3d 1404, 1406 (8th Cir. 1995). An evidentiary hearing is not required when a conclusion can be reached on the issue with the undisputed facts. *United States v. Winters*, 411 F.3d 967, 973 (8th Cir. 2005). This matter can be resolved based on the existing record, and thus the Court finds no evidentiary hearing is necessary.

## IV.   OBJECTIONS.

Given the expedited nature of these proceedings, the Court exercises its discretion to alter the standard timelines for Respondents to file objections to this Report and Recommendation. *See* L.R. 72.2(b)(1) ("A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition, unless the court sets a different deadline.") (emphasis added). Respondents must file any objection to this Report and Recommendation on or before **May 29, 2026**. Makitio G. A. may file a response to any objections on or before **June 5, 2026**.

14

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings in this case, **IT IS**

**RECOMMENDED** that:

1.  Petitioner Makitio G. A.'s Petition for Writ of Habeas Corpus (Doc. 1) be **GRANTED**; and;

2.  Respondents be ordered to release Petitioner Makitio G. A. from custody

    a.  Immediately;

    b.  Inside the State of Minnesota;

    c.  At a safe time and place communicated in advance to counsel;

    d.  And with all of Petitioner's personal effects in Respondents' possession or control, including, but not limited to, Makitio G. A.'s driver's license, immigration paperwork, work authorization, cell phone, keys, clothing, personal effects.

Date: May 22, 2026                     *s/Douglas L. Micko*
                                       DOUGLAS L. MICKO
                                       United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may typically lodge "specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation. But as noted above, the Court has adjusted this deadline such that any objection is due no later than **May 29, 2026**. *Accord* D. Minn. LR 72.2(b)(1) (14 day objection period "unless the court sets a different deadline").

A party may typically respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). However, the Court has adjusted this deadline such that any response is due no later than **June 5, 2026**. All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

16